IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **PREMIER TIERRA HOLDINGS, INC.** | § | |
| | § | |
| **Plaintiffs** | § | |
| | § | |
| v. | § | Civil Action No. 4:09-cv-02872 |
| | § | |
| **TICOR TITLE INSURANCE COMPANY OF FLORIDA, INC.** | § | |
| | § | |
| **Defendants.** | § | |

# Plaintiff's Amended Complaint

Premier Tierra Holdings, Inc. files this amended complaint against Ticor Title Insurance Company of Florida, Inc. and would respectfully show:

1. Premier Tierra Holdings, Inc. ("Plaintiff"), is a Texas corporation with its principal place of business in Laredo, Texas.

2. Ticor Title Insurance Company of Florida, Inc. ("Defendant') is a corporation organized under the laws of the State of Nebraska with its principal place of business in the State of Florida. Defendant has been served under Texas statute through its registered agent and has answered.

3. The District Court has subject matter jurisdiction over this action based on diversity under 28 U.S.C. § 1332(a) because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000.00.

4. The District Court has personal jurisdiction over Defendant because Defendant has continuous and systematic contacts with the State of Texas and this controversy arises out of Defendant's contacts with the State of Texas.

5. This District Court is a proper venue for this action under 28 U.S.C. § 1391(a)(1) and (2) because Defendant resides in the State of Texas and a substantial part of the events giving rise to Plaintiff's claim occurred in the State of Texas.

## Factual Background for Plaintiff's Action

6. In or about September 2004, International Bank of Commerce ("IBC") loaned Creekstone North Lagoon, LLC $4,180,000.00 to purchase specific property located on the Southwest side of North Lagoon Drive, northeast bank of Grand Lagoon, Panama City Beach, Bay County, Florida 32408 (hereinafter referred to as the "North Lagoon Property"). Under terms of the loan, IBC took a mortgage encumbering the North Lagoon Property described in the mortgage filed October 8, 2004 in the Official Records Book 2511, at Page 2365, of the Public Records of Bay County, Florida. IBC obtained title insurance from American Pioneer Title Insurance Company (predecessor to Defendant) in the amount of $4,180,000.00 ensuring against any defects in title, unmarketability of title, and title being vested other than fee simple in Creekstone North Lagoon, LLC under policy # LP -12-1763-933 ("Title Policy").

7. In late 2008, IBC determined that that Creekstone North Lagoon, LLC could not repay the loan and that it was unlikely that any amount of the loan could be recovered from the loan's guarantors. Accordingly, IBC assigned the note, mortgage and all its associated rights in the North Lagoon Property to Plaintiff, a wholly owned subsidiary of IBC, in or about February 2009. The endorsement by which Defendant acknowledged the assignment to Plaintiff and Plaintiff's status as the insured under the Title Policy was completed in March 2009.

8. As part of Plaintiff's intent to take a deed to the North Lagoon Property in lieu of and immediately place the property for sale, Plaintiff commissioned a title commitment from Fidelity National Title, an affiliate of Defendant, in February 2009, which was issued in early March 2009.

9. The title commitment issued in March 2009 identified title defects in the North Lagoon Property that rendered the property unmarketable. Specifically, the deed by which Creekstone North Lagoon, LLC received title to the North Lagoon Property (1) was not legally effective to transfer 50% of the purported interest in the most important parcel of the North Lagoon Property which abutted the water; and (2) had omitted part of the legal description of the same parcel. The identified title defects prevented Plaintiff from taking feel simple title to the property so that it could be sold.

10. Pursuant to the terms of the Title Policy, Plaintiff notified Defendant of the title defects through the claims process for all entities in the Fidelity National Title Group on or about March 2009. Under the Title Policy, Defendant is generally liable for any damages resulting from title defects not excepted from the policy. However, Condition & Stipulation 8(a) of the Title Policy limits liability by stating that Defendant shall not be liable for any loss or damage for a title defect or lack of marketability of title if Ticor removes the title defect or cures the unmarketability of title in a reasonably diligent manner.

11. Despite receiving notice of the title defects in March 2009, it appears that Defendant took few, if any, steps to cure the identified title defects. While Defendant maintained little contact with Plaintiff regarding the progress being made to cure the title defects, Plaintiff was eventually contacted by an agent of Defendant in or about August 2009 who informed Plaintiff that Defendant would not be able to cure the title defects, if at all, for several more months at a minimum and recommended that Plaintiff initiate its own efforts to fix the title defects.

12. Based on Defendant's refusal and/or inability to cure the title defects in a reasonably diligent manner, Plaintiff submitted a claim of loss under the Title Policy to Defendant in or about September

2009 seeking payment for the entire value of the property based on an appraisal dated November 2008 due to the lack of marketability of title to the North Lagoon Property.

13. Defendant contacted Plaintiff on or about September 2009 regarding the title defects and eventually retained counsel to take steps to cure any existing title defects on or about December 2009. Any and all title defects related to the Creekstone North Lagoon, LLC's deed to the North Lagoon Property were cured by the summer of 2010. Plaintiff proceeded to take a deed to the North Lagoon Property in lieu of foreclosure and is currently the fee simple owner of the North Lagoon Property.

14. However, because Defendant failed to act in a reasonably diligent manner in removing the title defects, Plaintiff elected to pursue a claim of loss against Defendant under the Title Policy for the decline in value of the North Lagoon Property caused by the title defects. Specifically, had the title defects not existed (i.e. had Plaintiff been able to receive and convey title to the North Lagoon Property), Plaintiff could have expected to receive approximately $2,185,000.00 from a sale of the North Lagoon Property after taking a deed in lieu of foreclosure and placing the North Lagoon Property on the market in March 2009. However, because the title defects were not cured until the summer of 2010, Plaintiff can only expect to receive approximately $1,125,000.00 from a sale of the North Lagoon Property. In addition, Plaintiff incurred other costs associated with the North Lagoon Property, such as property taxes, because the title defects prevented Plaintiff from selling the property. Plaintiff submitted its claim of loss to Defendant for payment, but Defendant has failed to pay the claim under the Title Policy.

## Cause of Action

### Breach of Contract

15. Plaintiff incorporates paragraphs 1 through 14 as if fully stated herein.

16. Plaintiff and Defendant had a valid contract in the form of a mortgagee title insurance policy on the North Lagoon Property insuring against loss or damages associated with, among other things,

defects in title, unmarketability of title, and title being vested other than fee simple in Creekstone North Lagoon, LLC.

17. Plaintiff made a claim for payment of loss against the Title Policy for losses associated with the title defects associated with the North Lagoon Property based upon Defendant's failure to cure the title defects in a reasonably diligent manner.

18. Defendant breached the title insurance contract by failing to pay the claim.

19. Defendant's breach has resulted in damages to Plaintiff.

<u>Attorneys' Fees</u>

20. Plaintiff incorporates paragraphs 1 through 19 as if fully stated herein.

21. Plaintiff is entitled to attorneys' fees under Chapter 38 of the Texas Civil Practices and Remedies Code and in accordance with Florida Statute §627.428.

**Conditions Precedent**

22. All conditions precedent to the maintenance of Plaintiff's claims have been performed or have occurred.

**Request for Relief**

WHEREFORE PREMISES CONSIDERED, Plaintiff Premier Tierra Holdings, Inc. requests that the Plaintiff have judgment for:

    a) All actual, incidental, and consequential damages in the approximate amount of $1,100,000.00;

    b) Attorneys' fees;

    c) Costs of suit;

    d) Pre- and Post- judgment interest at the maximum rate as provided by law from the date of judgment;

    e) Such other relief, at law or in equity, to which it is entitled.

          **Zimmerman, Axelrad,**
          **Meyer, Stern & Wise, P.C.**

       */s/ Leonard J. Meyer*
       Leonard J. Meyer
       Federal Bar No. 1477
       Texas State Bar No. 13993750
       3040 Post Oak Boulevard, Suite 1300
       Houston, Texas 77056
       Tel: (713) 552-1234
       Fax: (713) 963-0859
       Email: lmeyer@zimmerlaw.com

       ATTORNEY-IN-CHARGE FOR PREMIER TIERRA HOLDINGS, INC.

## Certificate of Service

I certify that on December 30, 2010 a true and correct copy of the foregoing document was served via [__] certified mail, return receipt requested, [x] facsimile or [_] hand delivery upon the following:

Randall K. Price           *Via Fax: (214) 978-4150*
CANTEY HANGER LLP
Suite 3330
1999 Bryan Street
Dallas, Texas 75201

       */s/ Leonard J. Meyer*
       Leonard J. Meyer