| | | |
|---|---|---|
| **PREMIER TIERRA HOLDINGS, INC.** | § | |
| | § | |
| **Plaintiffs** | § | |
| | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:09-cv-02872** |
| | § | |
| **TICOR TITLE INSURANCE COMPANY** | § | |
| **OF FLORIDA, INC.** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |
| | § | |
| | § | |

## Plaintiff's Response Ticor's Supplemental
## Motion for Summary Judgment and Brief in Support

Premier Tierra Holdings, Inc. ("Plaintiff") hereby submits this Response to Defendant Ticor Title Insurance Company of Florida's ("Ticor") Supplemental Motion for Summary Judgment and Brief in Support. It appears that Ticor's submission is effectively a revised version of its previous Motion to Dismiss amended as necessary in light of the Court's conversion of the Motion to Dismiss to a motion for summary judgment. Ticor's Supplemental Motion restates and clarifies Ticor's previous citations and arguments so that the Court need not refer back to the original Motion to Dismiss. Accordingly, Plaintiff's Response will be a revised version of its previous response and shall include its previous citations and arguments so that the Court need not refer back to Plaintiff's original Response to Ticor's Motion to Dismiss.

# I. SUMMARY OF ARGUMENT

1.      The intermediate appellate case law cited by Ticor does not conclusively demonstrate how the Florida Supreme Court would rule on Ticor's summary judgment arguments.  Accordingly, the Court should consider general Florida legal principles and persuasive legal opinions and argument arguments in making its "*Erie* guess".

2.      Ticor's argument that Paragraph 8(b) of the Mortgagee's policy of title insurance # LP- 12- 1763-933 ("Policy") prevents Plaintiff's claim is not supported by the Florida case law and legal authority applicable to the circumstances of this case.  Moreover, Ticor's interpretation of the Policy is inconsistent with Florida rules of contract construction.  In addition, Plaintiff's interpretation of the applicability of the reasonable diligence requirement is consistent with Florida law and is reasonable.  Furthermore, any ambiguity or inconsistency in the Policy should be resolved in favor of Plaintiff under Florida law.

3.      In addition, Ticor's argument that Paragraph 7(a) of the Policy eliminates Plaintiff's damages because it took title to the property on which the Policy was issued is sold ("Property") after the title defects were cured is not supported by the terms of the Policy, general contract interpretation, or any case law.  Moreover, Ticor's argument the Plaintiff cannot measure his damages until the Property is sold is contradicted by most of the case law cited by Ticor and is not supported by logical legal authority.

4.      Furthermore, Ticor's assertion that Plaintiff is solely seeking "consequential damages" that are not recoverable under the Policy is not supported by the case law it cites, which merely relates to limitations of liability under Paragraph 7(a).  In addition, Ticor cannot demonstrate that Plaintiff's damages are actually "consequential damages" and Ticor's public policy arguments are invalidated by the Paragraph 7(a) of the Policy.  Finally, Ticor cannot demonstrate that consequential damages are not recoverable under the Policy and there is persuasive treatise authority that such damages are recoverable.

## II.    SUMMARY JUDGMENT EVIDENCE

5.    As part of its Response, Plaintiff relies upon the following summary judgment evidence submitted by Ticor in its Supplemental Motion and incorporates it herein:

| | |
|---|---|
| **Exhibit A:** | Mortgagee's policy of title insurance # LP- 12-1763-933 ("Policy") |
| **Exhibit B:** | Endorsement to Mortgagee's policy of title insurance # LP-12-1763-9339 |
| **Exhibit C:** | Absolute Assignment of Note, Liens, Security Interests and Other Rights |
| **Exhibit E:** | Certified copy of Final Judgment clearing title to the Property |
| **Exhibit F:** | Certified copy of Quitclaim Deed related to the Property |
| **Exhibit H:** | Certified Copy of Special Warranty Deed in Lieu of Foreclosure |
| **Exhibit I:** | Mortgage |

## III.    NATURE AND STAGE OF THE PROCEEDINGS

6.    Plaintiff originally filed suit based on breach of the Policy on September 4, 2009. Plaintiff's claim was premised on Ticor breaching the Policy by failing to take any action after receiving notice of title defects that made the property associated with the Title Policy unmarketable, causing Plaintiff a loss measured by the entire market value of the property.

7.    After being served with this action and answering, Defendant proposed in December 2009 that it make efforts to cure the title defects. Accordingly, Plaintiff and Defendant agreed to request an abatement of this action while those efforts proceeded, which this Court granted after Plaintiff and Defendant jointly consented that this Court preside over this action rather than the original district court judge assigned to this case. All of the title defects were cured in or about the summer of 2010 and Plaintiff took title to the property associated with the Policy in August 2010. Plaintiff

subsequently elected to pursue its breach of contract action under the different factual allegations that Defendant had cured the title defects, but was still liable to Plaintiff for damages resulting from the title defects because Defendant had not cured the title defects in a reasonably diligent manner as required by Paragraph 8(a) of the Policy.

8.      On December 14, 2010, this Court entered a scheduling order permitting Plaintiff to file an amended pleading, setting various deadlines, and setting a trial date of December 12, 2011.  Plaintiff timely filed its Amended Complaint and Defendant timely filed its Amended Answer.

9.      The only other unresolved Motion before the Court is Ticor's Motion for Leave to File Answer to which Plaintiff only objects in part and to which a response is not yet due under the local rules.

### IV.      FACTUAL BACKGROUND

10.      Plaintiff is largely in agreement with the recitation of undisputed facts in Ticor's Supplemental Motion although it appears that some of the facts are not based on summary judgment evidence, but are merely facts to which Ticor is stipulating at least for purposes of the Supplemental Motion.  Plaintiff agrees with the factual recitations in Paragraphs 1-12, 14-15, and 18 (at least for purposes of the Supplemental Motion).

11.      With regard to the factual recitation in Paragraph 13 of the Supplemental Motion, Ticor exercised its right to cure under the Policy in December 2010 (although this fact would not appear to be material to the Supplemental Motion).  With regard to the factual recitation in Paragraphs 16 and 19 of the Supplemental Motion, Plaintiff acknowledges that the quoted text is part of the Title Policy, but does not agree with Ticor's editorial descriptions (e.g. "Paragraph 8(b) of the Policy unambiguously states …").  With regard to Paragraph 17, Plaintiff still owns the Property, but the Property itself was "applied" to the outstanding indebtedness when Plaintiff took a deed in lieu of title, which acknowledged that the only source from which any part of the indebtedness might be paid was the Property.

# V. ISSUES TO BE RULED UPON BY THE COURT AND STANDARD OF REVIEW

12.     While the Supplementary Motion is Ticor's, Ticor's recitation of the standard of review suggests that Plaintiff has the initial requirement to meet some evidentiary burden.  However, such a burden does not shift to Plaintiff until Ticor has met "the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986); *Royal Surplus Lines Ins. Co. v. Brownsville Indep. Sch. Dist.*, 404 F. Supp. 2d 942, 948 (S.D. Tex. 2005)   However, when the material facts are not in genuine dispute, the issue is a question of law which would be subject to a de novo review.  *Am. Indem. Lloyds v. Travelers Prop. & Cas. Ins. Co.*, 335 F.3d 429, 435 (5th Cir.2003).

13.     In this case, Ticor has not challenged whether Plaintiff can actually acquire evidence to support its breach of contract claim under its legal theory.  Instead, Ticor is asserting that Plaintiff cannot prevail regardless of the evidence because Plaintiff's legal theory cannot support its breach of contract claim.  Therefore, the following issues raised in Ticor's Supplemental Motion are questions of law:

**Issue 1:**     Does Paragraph 8(b) of the Policy unambiguously eliminate Ticor's liability to Plaintiff as a matter of law regardless of whether Ticor cured the title defects in a reasonably diligent manner?

**Standard**:     Summary judgment is proper if the pleadings, evidence, if any, and other matters presented to the court show that there is no genuine issue of material fact, and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986).  When the material facts are not in genuine dispute, the issue is a question of law which would be subject to a de novo review.  *Am. Indem. Lloyds v. Travelers Prop. & Cas. Ins. Co.*, 335 F.3d 429, 435 (5th Cir.2003).

**Issue 2:**     Does the absence of title defects on the date Plaintiff took title to the property Plaintiff's continued ownership of the Property prevent Plaintiff from having any measurable damages covered by the Policy as a matter of law?

**Standard:**    Summary judgment is proper if the pleadings, evidence, if any, and other matters presented to the court show that there is no genuine issue of material fact, and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986). When the material facts are not in genuine dispute, the issue is a question of law which would be subject to a de novo review. *Am. Indem. Lloyds v. Travelers Prop. & Cas. Ins. Co.*, 335 F.3d 429, 435 (5th Cir.2003).

**Issue 3:**    Are Plaintiff's damages "consequential damages" that are not covered by the Policy?

**Standard:**    Summary judgment is proper if the pleadings, evidence, if any, and other matters presented to the court show that there is no genuine issue of material fact, and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986). When the material facts are not in genuine dispute, the issue is a question of law which would be subject to a de novo review. *Am. Indem. Lloyds v. Travelers Prop. & Cas. Ins. Co.*, 335 F.3d 429, 435 (5th Cir.2003).

## VI.    ARGUMENT AND AUTHORITIES

14.    Initially, despite spending almost seven pages arguing that Florida law should apply under Texas' choice of law analysis, Ticor never actually provides a legally cognizable reading as to why it is necessary for the Court to analyze Ticor's arguments using Florida law. "A federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state" to determine which state's laws apply. *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir.2004). However, if the laws of the states do not conflict, then a choice-of-law analysis is not necessary and this Court may simply apply the law of the forum state. *Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005). Under Texas choice of law rules, this Court should presume that there are no relevant differences between Texas law and Florida law on a particular issue unless a party demonstrates otherwise. *Ogletree v. Crates*, 363 S.W.2d 431, 435 (Tex. 1963); *PennWell Corp. v. Ken Associates, Inc.*, 123 S.W.3d 756, 762 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). In other words, this Court should not waste its resources conducting a choice of law analysis or applying the law of a state with which it is not as familiar unless Ticor demonstrates that Florida law on the issue is substantively different than Texas law.

15.    Nowhere in the thirty-seven pages of Ticor's Supplemental Motion does it even assert that the substantive law of Texas and Florida differs as to breach of contract claims, title insurance, or measuring damages.  The sole justification offered by Ticor is that "Florida [intermediate appellate] courts have interpreted the Policy language … but Texas [courts have] not," which is not a legally supportable basis to conduct a choice of law analysis.  Nonetheless, despite Ticor's failure to justify the need for a choice of law analysis, Plaintiff will not belabor the issue (especially given that the substantive law between the two states does not appear to differ) and simply use legal principles established by the Florida Supreme Court.  Plaintiff only addresses the choice of law issue at all to highlight that Ticor's real hope is that this Court will abandon the actually analysis required to make an *Erie* guess and blindly apply the legal rulings from a handful of Florida intermediate appellate courts without any critical analysis as to whether those legal rulings are consistent with applicable Florida Supreme Court precedent.

16.    In a diversity suit such as this action, substantive state law governs the action.  *Centennial Ins. Co. v. Ryder Truck Rental, Inc*., 149 F.3d 378, 382 (5th Cir. 1998).  In the absence of dispositive final decisions from the highest state court, a federal court must predict how the highest state court would rule based on (1) decisions of the highest court in analogous cases; (2) the rationales and analyses underlying the highest state court decisions on related issues; (3) dicta by the highest state court; (4) lower state court decisions; (5) the general rule on the question; (6) the rulings of courts of other states to which the state at issue look when formulating substantive law; and (7) other available sources, such as treatises and legal commentaries.  *Id.*  Contrary to the implication of Defendant, "*Erie* does not command blind allegiance to a case on all fours with the case before the court."  *Shelp v. Nat'l Sur. Corp*., 333 F.2d 431, 439 (5th Cir. 1964).  The federal court may give some weight to lower state court decisions, but must ultimately use **all of the data the highest state court would use to reach the conclusion most likely to be reached by the highest state court**.  *Hulin v. Fibreboard Corp*., 178 F.3d 316, 318 (5th Cir. 1999).  (Emphasis added.)  In this case, basic

principles of contract construction applicable to insurance contracts demonstrate that the Florida Supreme Court would rule in favor of Plaintiff on the arguments raised in Ticor's Supplemental Motion.

**A.  Plaintiff's claim for breach of the Policy is not legally precluded by paragraph 8(b).**

17.     In this case, Plaintiff's claim for breach of the Policy is not legally precluded by paragraph 8(b) because (1) the present situation fits the exceptions established by the very legal authorities on which Plaintiff relies; (2) basic rules of contract construction under Florida law demonstrate that Plaintiff's claims is viable and that the *Synergism* line of cases reached the wrong conclusion.

        1.     <u>Paragraph 8(b) of the Policy does not preclude Plaintiff's claim because Ticor did not clear title to the Property by receiving a final favorable determination as the result of litigation and because Plaintiff is not challenging the diligence of Ticor's actions after a lawsuit was filed.</u>

18.     Ticor relies heavily on the purported agreement of the rulings from Florida intermediate appellate courts (*Synergism, Cocoa Properties*, and *Huntleigh Park*) interpreting Paragraph 8(b), but offers no explanation as to why the exception actually applied to reverse a summary judgment in *Cocoa Properties* would not be applicable here.  In *Cocoa Properties*, the title insurer accepted defense of a foreclosure action based on an undisclosed mortgage.  *Cocoa Properties, Inc. v. Commonwealth Land Title Ins. Co*., 590 So. 2d 989, 990 (Fla. Dist. Ct. App. 1991).  The mortgage-holder and the title company settled the foreclosure action in a manner that provided the owner of the property, Cocoa Properties, clear title to the property and the foreclosure action was voluntarily dismissed.  *Id.*   Cocoa Properties was not able to close on the original, profitable contract for sale because of the litigation and eventually sold the property at a loss. *Id.*   In reversing the summary judgment granted in favor of the title company in the subsequent litigation, the *Cocoa Properties* Court concluded, without any analysis, that paragraph [8(b)][1] would have precluded Cocoa

---

[1] At the time of the *Synergism* and *Cocoa Properties* opinions the paragraph that is the equivalent of current paragraph 8(b) in all relevant respects was 7(b) rather than 8(b).  Plaintiff shall uniformly refer to the equivalent paragraphs of each title policy analyzed in each relevant legal decision as 8(a) and 8(b) to avoid confusion.

Properties' suit if the title company had received a favorable final judgment (as the title company had done in *Synergism*.) *Id.* However, the *Cocoa Properties* Court ruled that paragraph 8(b) was inapplicable because the foreclosure action had been voluntarily dismissed and there was "no final determination, either adverse or favorable, concerning the title." *Id.* Instead, the *Cocoa Properties* court ruled that there was a fact issue as to whether the title defect had been removed within a reasonable length of time (i.e. in a reasonably diligent manner) under paragraph 8(a). *Id.*

19.    In this case, there were two major defects in the title of the North Lagoon Property: (1) the applicable deed was not legally effective to transfer 50% of the purported interest in the most important parcel of the North Lagoon Property which abutted the water; and (2) the applicable deed had omitted part of the legal description of the same parcel. (Pl.'s Am. Compl. § 9.) The second defect was cured through litigation by a default judgment. (Certified copy of Final Judgment clearing title to the Property, Ex. E.) On the other hand, the first defect was cured by a deed voluntarily signed by all those who might have had an interest in the parcel that was not effectively transferred by the deed. (Certified copy of Quitclaim Deed related to the Property, Ex. F.) Accordingly, one of the title defects (indeed, the defect with a bigger impact on the marketability of title) was cured by methods outside of litigation and Plaintiff's claim should be valid under *Cocoa Properties*.

20.    Ticor's Supplemental Motion never even addresses why Plaintiff's claim is not valid under *Cocoa Properties*. Indeed, Ticor glosses over the issue by asserting that "Ticor successfully cured any and all defects in the Property's title through litigation," even though that assertion is quite clearly incorrect. (Supplemental Motion at 16.) Furthermore, *Synergism* and *Huntleigh Park* do not even purport to address the application of the reasonable diligence requirement to a situation in which title was not cured through successful litigation. *Lawyers Title Ins. Co. v. Synergism One Corp.*, 572 So. 2d 517, 518 (Fla. Dist. Ct. App. 1990); *Huntleigh Park, Inc. v. Stewart Title Guar.*

*Co.*, 717 So. 2d 1037 (Fla. Dist. Ct. App. 1998).[2]  Given that the only Florida appellate opinion that has considered a situation in which title defects were cured outside of litigation held that the title companies curative efforts were subject to the reasonable diligence requirements of Paragraph 8(a), Plaintiff should have a viable claim pursuant to the *Cocoa Properties* opinion (at least as to one of the title defects) even under Ticor's odd interpretation of how this Court should conduct its *Erie* analysis.

21.    Moreover, according to the article by Shawn Rader heavily cited by Ticor, Plaintiff's claim is not legally precluded by the *Synergism* line of cases' interpretation of Paragraph 8(b).  Ticor relies heavily on the factual recitations and legal assertions in Mr. Rader's article in making his argument. This Court should probably not place much reliance upon Mr. Rader's factual recitations and legal assertions.  Mr. Rader's factual recitations which purported to describe historic documents and events to which there is little or no public access and his legal assertions are merely based on his interpretation of legal opinions to which the Court has equal access.[3]  Nonetheless, if Mr. Rader's article merits the reliance suggested by Ticor, the article actually provides an exception that prevents summary judgment.

22.    Mr. Rader's conclusion is that the *Synergism* line of cases only precludes application of the reasonable diligence requirement to complaints about the length of a lawsuit once it is filed.  Rader, *Synergism Revisited*, *supra*, at 51.   Indeed, he specifically states that the applicability of the reasonable diligence requirement to situations in which the title company waits to bring suit after acknowledging coverage and promising to remove the defect remains unresolved by Florida courts.

---

[2] *Huntleigh Park*, though published, affirmed the lower court ruling without any opinion whatsoever.  Ticor's supposition about the basis for the *Huntleigh Park* ruling is based solely upon the factual recitations by Shawn Rader in *The Interpretation of §§7(A) and 7(B) of Title Policies Under Florida Law: Synergism Revisited*. However, this Court should take all Mr. Rader factual recitations with a grain of salt as Mr. Rader does not offer any documentary support for his recitations and does not explain how he became aware of the circumstances of the case or the arguments made before the *Huntleigh Park* Court.  Shawn G. Rader, *The Interpretation of §§7(A) and 7(B) of Title Policies Under Florida Law: Synergism Revisited*, 73-Jan Fla. B. J. 46 (1999).

[3] Indeed, Mr. Rader's article is primarily devoted to providing details regarding legal opinions actually addressing a specific issue without considering whether the opinions are consistent with Florida Supreme Court rules regarding the construction of insurance contracts.

*Id.* Ticor has not provided any evidence demonstrating that the exception identified by Mr. Rader is not applicable[4] in this case or even acknowledged the existence of such an exception. Therefore, to the extent that Mr. Rader's article is accepted as persuasive legal authority, the *Synergism* line of cases does not preclude Plaintiff's claim as a matter of law.

        2.    <u>The Florida Supreme Court would conclude that Paragraph 8(b) does not bar Plaintiff's claim, that the *Synergism* line of cases incorrectly interpreted the applicable title policy provision and that the reasonable diligence requirement in Paragraph 8(a) applies to all efforts to cure title, including litigation.</u>

23.    Contrary to Ticor's assertion, the *Synergism, Cocoa Properties*, and *Huntleigh Park* decisions are not dispositive as to this Court's "*Erie* guess." Intermediate Florida appellate opinions are never dispositive, but are only informative as to how the Florida Supreme Court might rule to the extent they are actually persuasive. *See, e.g., Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546 (5th Cir. 2004) (discounting two lower appellate court rulings in making an "*Erie* guess", in part, because "neither case provides a persuasive argument suggesting how the Texas Supreme Court would decide the issue"). The *Synergism* opinion is one page long and the portion containing legal analysis (as opposed to reciting facts or quoting policy language) is considerably shorter. *Lawyers Title Ins. Co. v. Synergism One Corp.*, 572 So. 2d 517, 518 (Fla. Dist. Ct. App. 1990). The opinion does not apply any principles of contract construction and, in fact, specifically discounts the principle of contract construction relied upon by the trial court that the terms of the policy should be construed together. *Id.* The only citation is a vague reference to a quotation from treatise from D. Barlow Burke that was not directly addressing whether the reasonable diligence requirement applied to title defect litigation.

24.    The *Cocoa Properties* opinion, while supporting the validity of Plaintiff's claim, is little better than the *Synergism* opinion. The portion containing legal analysis (as opposed to reciting facts or quoting policy language) is less than one page and over half of that one page is devoted to

---

[4] Indeed, Plaintiff has not yet had an opportunity to conduct discovery which might yield evidence applicable to this exception.

analyzing the exception applicable to Plaintiff. *Cocoa Properties*, 590 So.2d at 991. The opinion simply repeats language from *Synergism* without further analysis. *Id.* There is no opinion in *Huntleigh Park, Inc. v. Stewart Title Guar. Co.*, 717 So. 2d 1037 (Fla. Dist. Ct. App. 1998). Furthermore, ruling in *Huntleigh Park* may have been based on the plaintiff's decision to reduce its purchase price based on the title defects rather than waiting for the defects to be cured. Rader, *Synergism Revisited*, *supra*, at 51 ("the insured …enervated its own argument … by choosing to go forward to closing and reducing its purchase price without seeking permission of Stewart Title").

25. Furthermore, the opinions Ticor cites from other jurisdictions are equally unpersuasive. The South Carolina appellate decision, while containing a more lengthy (two pages) legal analysis, is similarly devoid of any discussion of principles of contract construction. *First Fed. Sav. Bank of Brunswick v. Stewart Title Guar. Co.*, 317 S.C. 131, 139, 451 S.E.2d 916, 920 (S.C. Ct. App. 1994). As for the unpublished opinion in *Bank of Sacramento v. Stewart Title Guar. Co*, that Court summarily concluded that there was no ambiguity without analyzing the conflict between Paragraphs 8(a) and 8(b) or considering any of the available case law. 09-00771-JAM-KJN, 2010 WL 3784096, *4-5 (E.D. Cal. Sept. 27, 2010). In short, none of the opinions actually cited by Defendant actually provide any useful analysis to this Court in making its "*Erie* guess."

26. However, the Florida Supreme Court's rules of contract construction provide this Court more than enough information to conclude that the Florida Supreme Court would rule in Plaintiff's favor. An insurance policy is construed as written using ordinary rules of contract construction if it is not ambiguous. *Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So. 2d 938, 941 (Fla. 1979). The ordinary rules of construction include construing relevant provisions of a contract together, giving meaning and effect to every provision of a contract, reconciling apparent inconsistencies if possible, and preferring a reasonable interpretation to an unreasonable one. *Id.* An insurance policy is ambiguous if it is susceptible of more than one reasonable interpretation after

applying ordinary rules of construction. *Id.* If an insurance policy is ambiguous, it is construed in favor of the insured. *Id.*

27.     In this case, the applicable provisions the Court should consider in construing whether the reasonable diligence requirement applies in the present situation are Paragraph 4(b), Paragraph 8(a), and Paragraph 8(b) of the Policy:

> "The Company shall have the right, at its own cost, to **institute and prosecute any action or proceeding** or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage …If the Company shall exercise its rights under this paragraph, **it shall do so diligently**. (Emphasis added.)

> If the Company establishes the title, or removes the alleged defect …**in a reasonably diligent manner by any method, including litigation** and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby. (Emphasis added.)

> **In the event of any litigation** by the Company or with the Company's consent, **the Company shall have no liability for loss or damage until there has been a final determination** by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured. (Emphasis added.)

(Policy, Ex. A.)

28.     Plaintiff's interpretation is that the reasonable diligence requirement stated in Paragraph 4(b) and Paragraph 8(a) applies to all efforts to cure, including litigation while Paragraph 8(b) simply prevents an insured from bringing a claim for damages against the insurer while litigation concerning title defects is pending. Plaintiff's interpretation is consistent with many of the rules of contract construction in that it construes relevant provisions together, is reasonable, and reconciles inconsistencies, but it cannot give meaning and effect to every word because the reasonable diligence requirements of 8(a) and 4(b) are incompatible with the literal language of 8(b).

Nonetheless, Plaintiff's interpretation is far more consistent with the rules of contract construction than the interpretation proposed by Ticor and the *Synergism* line of cases. Indeed,

neither the Supplemental Motion nor the case law cited favorably by Ticor even addresses the principles of contract construction made applicable by the Florida Supreme Court. The *Synergism* line of cases makes no effort to construe the relevant provisions together and specifically treats Paragraph 8(b) independent from the rest of the title policy. Further, Ticor's interpretation fails to give every word meaning or eliminate inconsistencies. Paragraphs 4(b) and 8(a) could not be clearer in making the reasonable diligence requirement applicable to all efforts to cure **by any method, including litigation**. Adopting Ticor's interpretation of the Policy would require this Court to ignore language in two different contractual provisions.

Moreover, it simply is not reasonable to construe Paragraph 8(b) as eliminating the diligence requirement in light of the other contractual provisions. Courts should prefer a reasonable interpretation of a contract to an unreasonable one. *Excelsior*, 369 So. 2d at 941. Under the interpretation of Paragraph 8(b) advanced by Ticor in which a title company's litigation efforts are not subject to a diligence requirement, a title company would have much less incentive to engage in non-litigation efforts that might lead to a faster and potentially cheaper resolution of the title defects because non-litigation efforts would subject Ticor to a lawsuit by the insured that would be foreclosed by litigation. Furthermore, Ticor's interpretation would provide incentives for insurers to intentionally delay the pursuit of litigation to cure a title defect so long as it could successfully do so through litigation. Any title company facing notice of a title defect from an insured that would be potentially expensive to litigate successfully could force the insured to compromise its rights under the policy by threatening to intentionally draw out the proceedings to cure title. Indeed, title insurance that does not require the insurer to act diligently leaves the insured at the title insurer's mercy and provides a huge incentive (and no remedy) for bad faith on the part of the title insurer.

29.     Even assuming that Ticor's interpretation was as reasonable as Plaintiff's, any ambiguities or inconsistencies in an insurance contract remaining after application of the rules of contraction should be resolved against the insurer and in favor of coverage under Florida law. *Excelsior*, 369 So. 2d at

941.  For example, after analyzing the *Synergy* line of cases and concluding that Paragraphs 8(a) and 8(b) created an ambiguity, the court in *Hatch v. First Am. Title Ins. Co.* construed the title policy in favor of the insured.  895 F. Supp. 10, 11-13 (D. Mass. 1995).  The Supreme Court of Maine reached a similar conclusion (although without any extensive analysis).  *Hodas v. First Am. Title Ins. Co.*, 1997 ME 137, 696 A.2d 1095, 1096 (Me. 1997).

30.     In short, the Florida Supreme Court's rules of contract construction and the better reasoned opinions from other jurisdictions demonstrate that the Florida Supreme Court would likely rule that Plaintiff's claim is not legally precluded by Paragraph 8(b).

**B.      The absence of title defects on the date Plaintiff took title to the property and Plaintiff's continued ownership of the Property do not prevent Plaintiff from having measurable damages covered by the Policy.**

31.     Ticor's arguments regarding Plaintiff's alleged lack of compensable damages appear to be asserting two arguments: (1) that Paragraph 7(a) limits Plaintiff's damages to zero because Plaintiff did not take title to the Property until after the defects were cured; and (2) that Plaintiff's loss under the Policy cannot be measured until it sells the Property.   Ticor appears to be trying to mesh these two disparate arguments together even though none of the legal authority it cites regarding the measure of damages refers to a limitation of liability provision akin to Paragraph 7(a).  While Ticor proceeds as if these arguments can be combined into one legal tenet, they have nothing do to with one another.   The method by which a plaintiff's damages are measured has no connection to a contractual term that may limit a defendant's liability regardless of the actual amount of a plaintiff's damages.    In this case, general Florida rules regarding damages ordinary rules of contract construction under Florida law and demonstrate that Plaintiff has compensable damages covered by the Policy.

1.     <u>The absence of title defects on the date Plaintiff took title does not prevent Plaintiff from having measurable damages under the Policy.</u>

32.     First, Paragraph 7 of the Policy does not address the value of Plaintiff's loss, which is instead addressed by the language at the front of the Policy and Paragraph 5. Instead, Paragraph 7 caps Defendant's liability independently of the amount of the actual loss. Defendant claims that 7(a)(iii) eliminates its liability because there were no title defects on the date Plaintiff took title (which is the date for valuation of Plaintiff's loss based on the fair market value of the Property).[5] However, none of the case law cited by Defendant supports its interpretation.

33.     Moreover, Ticor's argument is contradicted by the clear language of Paragraph 8(a) of the Policy. Under Florida law, compensatory damages, whether for breach of contract or tort, are designed to make the injured party whole to the extent that it is possible to measure such injury in monetary terms. *MCI Worldcom Network Services, Inc. v. Mastec, Inc.*, 995 So. 2d 221, 223 (Fla. 2008). The principles applicable to recoveries under title insurance policies are merely a more specific articulation of that general concept:

> 'In measuring an insured's loss resulting from a breach of the policy as to title, the fundamental rule that an insured is entitled to recover the actual loss or damage sustained from a defect, lien, or encumbrance affecting his title which was not excepted from the policy's coverage, applies regardless of whether the insured is the owner of the property or a mortgagee. However, since their interests differ in nature, the loss or damage sustained by each correspondingly differs and is measured accordingly.

*Goode v. Fed. Title & Ins. Corp.*, 162 So. 2d 269, 270-71 (Fla. Dist. Ct. App. 1964) (citing 60 A.L.R.2d 972). While the measure of damages for a mortgagee is normally the difference between the mortgage as insured and the market value of the mortgage with the title imperfection, there is no definite rule other than the measure must be based upon "the extent to which the security has been impaired" as a result of the title defects. *Id.*

---

[5] The limits in Paragraph 7(a)(i) and (ii) do not appear to be at issue.

34.     The ordinary rules of construction include construing relevant provisions of a contract together, giving meaning and effect to every provision of a contract, reconciling apparent inconsistencies if possible, and preferring a reasonable interpretation to an unreasonable one. *Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So. 2d 938, 941 (Fla. 1979).  In this case, the Policy broadly insures against loss or damage sustained or incurred by title defects or unmarketability of title. (Policy at 1, Ex. A.)   Paragraph 8(a) only eliminates liability if Ticor establishes title or removes defects "in a reasonably diligent manner."  (*Id.*)

35.     Therefore, in construing those provisions together and giving every word meaning, the Policy clearly contemplates that an insured could have a claim under the Policy after the title defects have been cured.  In fact, Plaintiff cannot think of any damage that might exist under those circumstances other than the damage claimed by Plaintiff: a drop in market value and carrying expenses associated with a delay in the property from being sold because of the title defects.  The normal measure of damages would not be applicable to such a situation, but a measure of damages that identified the loss due to the delay would be consistent with the principle that the measure of damages must indicate "the extent to which the security has been impaired" as a result of the title defects.  Indeed, given the nature of the title defects in this case, it was not possible for Plaintiff to take the title as insured by Defendant until after the defects were cured.  Interpreting the Policy as proposed by Ticor would be unreasonable and render provisions of the Policy meaningless.

36.     Furthermore, the sole purpose of Paragraph 7(a)(iii) is to ensure that Ticor's liability is limited to the lost value associated with the title defect regardless of Plaintiff's actual loss.   The limitation in Paragraph 7(a)(iii) is determined by the difference between the value of Property with the title defect and the value of the Property without, which requires one of those two values to be hypothetical in nature (the value with the defects if the defects were cured or the value without the defects if the defects could not be cured).  For example, if an appraisal indicated that the title defects at issue in this case merely diminished the value of the Property by $100, then Ticor's liability would

be limited to $100 even if the title defects caused Plaintiff a loss of $1,125,000. Ticor has offered no evidence of any kind on this point and so has not demonstrated that there is no material fact issue as a matter of law.

      2.    <u>Plaintiff's continued ownership of the Property does not prevent Plaintiff from having measurable damages under the Policy.</u>

37.     As for Ticor's assertion that Plaintiff's damages cannot be measured until it resells the Property, the case law cited by Ticor does not support that assertion. In *CMEI*, the loan by the insured mortgagee and the title policy limit was $1,475,000. *CMEI, Inc. v. Am. Title Ins. Co.*, 447 So. 2d 427, 427 (Fla. Dist. Ct. App. 1984). After the mortgagor defaulted, the insured mortgagee purchased the property at a foreclosure sale and discovered that there were two recorded easements not excluded from the title policy coverage. *Id.* The insured mortgagee sued for the diminished value of the property, but the trial court entered summary judgment for the title insurer. *Id.* The *CMEI* Court explained that a mortgage title policy was different from an owner title policy because an owner's title policy allows the owner to recover any loss caused by title defects while a mortgagee's title policy entitles him only to any loss to the extent the title defects prevent the mortgagee from collecting the entire insured amount due under the loan. *Id.* The Court concluded that the summary judgment was proper because "there is no genuine issue as to the fact that the value of the property, the title to which was insured, is above the amount of the [$1,475,000] indebtedness secured by the insured mortgage interest and is above the maximum insured interest." *Id.* at 427-28.

38.     *CMEI* was a narrow opinion that simply held that an insured mortgage does not have a loss when the fair market value of a foreclosed property with title defects is greater than the secured indebtedness. In fact, to the extent that *CMEI* is actually applicable to the Supplemental Motion, it actually indicates that the fair market value of a property at the time of a mortgagee's foreclosure, rather than a subsequent sale, is a proper method of measuring an insured's damage under a title policy. *Id.*

39.     On the other hand, the *Cale* opinion from an intermediate California appellate court cited by Ticor did hold that an insured mortgagee could not have a loss under its title policy until it sold the relevant property for a loss on the loan. *Cale v. Transamerica Title Ins*., 225 Cal. App. 3d 422, 428, 275 Cal. Rptr. 107, 110 (Cal. Ct. App. 1990). However, there is no persuasive reason for this Court to accept the reasoning in *Cale*. There was a vigorous dissent in *Cale* that contained a more detailed analysis than in the actual opinion. *Id.* at 428-31. Furthermore, Ticor cannot identify a single other opinion reaching the same conclusion as the *Cale* majority (and Plaintiff has located none). Finally, the *Karl* opinion from a different California court cited by Ticor actually rejected the *Cale* opinion on that issue and adopted the dissent on the issue of whether a mortgagee that had foreclosed on property needed to sell the property before incurring a loss under a title policy. *Karl v. Commonwealth Land Title Ins. Co*., 20 Cal. App. 4th 972, 983, 24 Cal. Rptr. 2d 912, 919 (Cal. Ct. App. 1993); *see also First Internet Bank of Indiana v. Lawyers Title Ins. Co*., 1:07-CV-0869-DFH-DML, 2009 WL 2092782 (S.D. Ind. July 13, 2009) (reaching same conclusion as *Karl*). Indeed, the *Karl* Court and the *Cale* dissent both concluded that the proper method of measuring an insured mortgagee's damages would be based on "the fair market value as of the date of foreclosure, not the price realized at a later sale." *Karl*, 20 Cal. App. 4th at 983; *Cale*, 225 Cal.App.3d at 430-31 (dissent).

40.     As Plaintiff has demonstrated, Florida general rules regarding damages and general rules of contract construction demonstrate that Plaintiff's measure of damages is valid and appropriate under Florida law. Contrary to Ticor's assertion, the limitation of liability in Paragraph 7(a) of the Policy does not speak to Plaintiff's measure of damages and it would be unreasonable for the Court to interpret the policy otherwise. Furthermore, Ticor offered no evidence from which to establish a limitation of liability under Paragraph 7(a) of the Policy. In addition, the case law cited by Ticor actually supports Plaintiff's measure of damages and does not require Plaintiff to sell the Property to measure its damages. Therefore,

**C.    Ticor has not demonstrated that Plaintiff's damages are "consequential damages" that are not covered by the Policy.**

41.    A large part of Ticor's argument regarding "consequential damages" merely involves the citation of case law discussing the limitation of liability provision in Paragraph 7(a) of the Policy. For example, in *Miller v. Ticor Title Ins. Co.*, the Court upheld summary judgment in favor of the insurer on a claim for the insured's loss of use. 93 P. 3d 88, 91 (Or. Ct. App. 2004). In that case, the insurer had conclusively established that "the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy" was $15,000 and the insurer had paid that amount to the insured under the policy. *Id.* Therefore, the *Miller* Court concluded that Paragraph 7(a) prevented the insured from being entitled to additional damages. *Id.* The *Miller* decision had nothing to do with not being able to recover consequential damages under the policy and the *Miller* court actually declined to analyze that issue. *Id.* The other case law cited by Ticor also merely applies the limitations in Paragraph 7(a) and is equally inapplicable to Ticor's argument regarding consequential damages.

42.    As for the application of Paragraph 7(a) of the Policy, the *Miller* opinion demonstrates that Ticor could only establish a limit to its liability under that provision if it presented evidence of "the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy." Ticor has provided no evidence attempting to value the Property with and without the title defects. Therefore, Ticor has not met its burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, that demonstrate the absence of a genuine issue of material fact as to the monetary limit of Ticor's liability under Paragraph 7(a). *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).

43.     As for the issue of consequential damages, there is no legal support for the notion that Plaintiff's damages for diminished market value are "consequential damages" which tend to be things like lost profits or loss of use.  *See generally* Mark A. Brown, Christopher W. Smart, *Are Consequential Damages Recoverable from Title Insurers or Has There Been "A Change in Policy"?,* 81 Fla. B. J. 60, 61 (2007).  Furthermore, the public policy arguments advanced by Ticor are inapplicable because Paragraph 7(a) provides the limitation on liability which caps an insurer's damages at amounts consistent with the premiums and liability intended to be assumed by Ticor.  If the Policy was intended to exclude consequential damages it would have had a provision specifically excluding such damages.  Moreover, "absent conditions and stipulations in a policy to the contrary, the arguments for compensating a claimant for economic or consequential loss are clear and convincing."  D. Barlow Burke, *Law of Title Insurance*, 7-46 (2004).

44.     Furthermore, the only applicable law indicates that Plaintiff can recover the damages it seeks.  The *Cocoa Properties* case, relying upon *Nebo, Inc. v. Transamerica Title Ins. Co*., 21 Cal.App.3d 222, 98 Cal.Rptr. 237 (Cal.Dist.Ct.App.1971), held that the plaintiff had a potentially valid damage claim for the drop in market value associated with a lost sale due to a title defect.  Furthermore, the *Hodas* Court confirmed the validity of a claim based on diminished market value associated with a title defect delaying a property sale.  *Hodas,* 1997 ME 137, 696 A.2d at 1096.  Therefore, Ticor is not entitled to summary judgment against Plaintiff on the basis that Plaintiff's damages are "consequential damages" not covered by the Policy.

## IV.     CONCLUSION

FOR THESE REASONS, Plaintiff respectfully requests that this Court deny Ticor's Supplemental Motion for Summary Judgment and Brief in Support.

**Zimmerman, Axelrad,
Meyer, Stern & Wise, P.C.**


_____ */s/ Leonard J. Meyer*_____
Leonard J. Meyer
Federal Bar No. 1477
Texas State Bar No. 13993750
3040 Post Oak Boulevard, Suite 1300
Houston, Texas 77056
Tel: (713) 552-1234
Fax: (713) 963-0859
Email: lmeyer@zimmerlaw.com

ATTORNEY-IN-CHARGE FOR PREMIER TIERRA
HOLDINGS, INC.


# Certificate of Service

I certify that on May 4, 2011 a true and correct copy of the foregoing document was served via [__] certified mail, return receipt requested, [x] facsimile or electronic service or [_] hand delivery upon the following:

Randall K. Price                     *Via Fax: (214) 978-4150*
CANTEY HANGER LLP
Suite 3330
1999 Bryan Street
Dallas, Texas 75201

_____ */s/ Leonard J. Meyer*_____
Leonard J. Meyer