# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| PREMIER TIERRA HOLDINGS, INC., | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:09-CV-02872 |
| | § | |
| TICOR TITLE INSURANCE COMPANY OF | § | |
| FLORIDA, INC., | § | |
| *Defendant*. | § | |

## MEMORANDUM AND ORDER

This title insurance case is before the court on the defendant Ticor Title Insurance Company of Florida, Inc.'s motion for summary judgment. (Dkts. 23, 35). After oral argument on May 25, 2011 (Dkt. 43) and extensive deliberation on these complex issues, the motion is granted in part and denied in part.

## Background[1]

In September of 2004, International Bank of Commerce (IBC) loaned Creekstone North Lagoon, LLC $4,180,000 to purchase a piece of property in Panama City Beach, Florida. IBC took a mortgage encumbering the property and obtained title insurance from American Pioneer Title Insurance Company (Ticor's former name) for the amount of the purchase price. The policy is a "Florida Modified" American Land Title Association Loan Policy of Title Insurance. (Dkt. 35-1). In late 2008, IBC determined that it would not recover the loan repayment from either Creekstone or the loan's guarantors. In February 2009, IBC assigned the note, mortgage, and associated rights

---

[1]The following facts are assumed as true for purposes of this motion only. The court will draw, as it must, all inferences arising from the facts in the light most favorable to the nonmoving party. *Hotard v. State Farm Fire & Cas. Co.*, 286 F.3d 814, 817 (5th Cir. 2002).

to Premier Tierra Holdings, Inc., making Premier an insured mortgagee under the title policy. (Dkt. 35-3).

As part of Premier's intent to take a deed in lieu of foreclosure, Premier commissioned a title commitment in March 2009, and discovered two distinct title defects:  (1) the deed Creekstone received was not effective to transfer 50% of the interest in a parcel abutting Grand Lagoon; and (2) the deed omitted part of the legal description of the same parcel.[2] Premier notified Ticor of these defects. Six months later on September 4, 2009, Premier submitted a claim of loss under the policy, and filed this lawsuit. (Dkt. 1). The parties subsequently consented to magistrate judge jurisdiction. (Dkt. 11).

On February 19, 2010, this court granted Ticor's unopposed motion to abate the case, giving Ticor an opportunity to cure the title defects. (Dkt. 14). On April 16, 2010, Ticor cured the first title defect by obtaining quit claim deeds from various persons, conveying their interests to Creekstone. (Dkt. 35-6). As for the second title defect, on April 13, 2010, Creekstone (through counsel paid by Ticor) filed a lawsuit to reform the deed. (Dkt. 35-4).[3] On June 7, 2010, Creekstone obtained a final judgment in its favor, ordering the deed reformed. *Id.* On August 31, 2010, after both title defects were cured, Premier took a deed in lieu of foreclosure from Creekstone, and is currently the fee simple owner of the property. (Dkt. 35-8).

---

[2]Neither the title commitment nor the alleged deed Creekstone received are in the record.

[3]The summary judgment evidence of Ticor's cure of these defects is confusing. The first defect was allegedly cured by a quit claim deed from various persons with the last name Fitzsimons, whereas the second defect was allegedly cured by a suit against SFB Investment Company, LLLP. On its face, this does not make sense if both defects, as alleged by the parties, are found in a single deed. Nevertheless, both parties assert that these actions cured the defects.

2

Premier's amended complaint asserts a cause of action for breach of contract resulting from Ticor's alleged failure to cure the defects in a reasonably diligent manner, and seeks damages in the amount of the decrease in fair market value from March 2009 (when Premier initially sought to take a deed in lieu of foreclosure) to the summer of 2010 (when Ticor cured the title defects).[4] (Dkt. 21). Although the amended complaint conceded that the title defects were cured by the summer of 2010, it did not specify how they were cured. On January 18, 2011, Ticor filed a motion to dismiss, asserting, *inter alia*, that since the defects were cured by litigation, the policy precluded Ticor's liability. (Dkt. 23). To prove the method of cure, Ticor attached a transcript of the Rule 16 scheduling conference, and argued that Premier's counsel admitted that the defects were cured by litigation. (Dkt. 23-2). The court converted Ticor's motion to dismiss into a summary judgment motion and ordered both parties to submit supplemental briefs accompanied with summary judgment evidence. (Dkt. 33). Now before the court are Ticor's (converted) summary judgment motion and supplemental summary judgment motion, Premier's respective responses, and Ticor's reply in support of its (converted) summary judgment motion. (Dkts. 23, 27, 29, 35, 37).[5]

## Standard of Review

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and therefore judgment is appropriate as a matter of law. Fed. R. Civ. P. 56(c). A dispute is "genuine" if the evidence could lead a reasonable jury to find for the non-movant. *In re*

---

[4]At oral argument, Premier's counsel modified this "delay period," basing its claim on the period beginning in April 2009 (when Premier discovered the title defects) until February 26, 2010 (when this court abated the case to allow Ticor to cure the title defects).

[5]Ticor's motion for leave to file a reply brief (Dkt. 29) is granted.

*Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir. 2002). The movant has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). If the movant satisfies its burden, "the non-movant must identify specific evidence in the summary judgment record demonstrating that there is a material fact issue concerning the essential elements of its case for which it will bear the burden of proof at trial." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996).

## Analysis

### 1.     Choice of Law

Premier cites general similarities between Florida and Texas insurance law to argue that Texas law applies to this action. Indeed, if the two states' laws do not conflict, this court need not engage in a choice of law analysis, and will simply apply Texas law. *See Mumblow v. Monroe Broadcasting, Inc.*, 401 F.3d 616, 620 (5th Cir. 2005). But despite the similarities in the states' laws of insurance contract interpretation, this court has not found similar-finding case law on the main interpretive battleground of this motion, and the analysis is further complicated because Florida courts are silent as to other relevant issues. *See W.R. Grace & Co. v. Continental Cas. Co.*, 896 F.2d 865, 874 (5th Cir. 1990) (noting the lack of clarity of the states' law in deciding whether to conduct a choice of law analysis). Since it is not certain that Texas and Florida title insurance law is without conflict, this court will engage in a choice of law analysis.

In diversity cases, federal courts follow the conflict-of-law rules of the forum state. *See Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941). In breach of contract

4

actions where the contract does not have an express choice of law, Texas courts look to the following factors to determine which state has the "most significant relationship" to the transaction:  "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." Restatement (Second) of Conflict of Laws § 188(2) (1971); *see id.* § 188 cmt. e; *Sonat Exploration Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 233 (Tex. 2008). Here, the contract is for title insurance, insuring Premier's mortgage interest on Florida real property. Ticor, a Florida corporation, negotiated the contract (requiring Creekstone to fulfil certain conditions) in Florida, before underwriting and issuing the policy in Florida. (Dkt. 35-10). The only Texas contact in this case is Premier's state of incorporation. In sum, all of the Restatement factors indicate Florida has the "most significant relationship" with the insurance policy, and thus Florida substantive law applies to this action.

In determining Florida law, this court first determines whether the Florida Supreme Court has dispositively spoken. *See Centennial Insurance Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382 (5th Cir. 1998). Where the Florida Supreme Court is silent, the court must make an "*Erie* guess" and predict what the Court would most likely decide, disregarding its own opinion as to the legal soundness of the state's law. *See West v. American Tel. & Tel. Co.*, 331 U.S. 223, 236–37 (1940); *Herrmann Holdings Ltd. v. Lucent Technologies Inc.*, 302 F.3d 552, 558 (5th Cir. 2002); *Centennial*, 149 F.3d at 382. "In making an *Erie* guess, we defer to intermediate state appellate court decisions 'unless convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Herrmann Holdings*, 302 F.3d at 558; *see also Cerda v. 2004-EQR1 L.L.C.*, 612 F.3d

781, 794 (5th Cir. 2010). This data may include rules of other state courts, treatises, and legal

commentaries. *Herrmann Holdings*, 302 F.3d at 558; *Centennial*, 149 F.3d at 382.

**2.      Title Insurer's Ability to Cure Title Defects**

**a.      Generally**

"A title insurance policy . . . is a contract whereby the insurer is paid one sum in

consideration for agreeing to indemnify the insured up to a specified amount against loss caused by

encumbrances upon or defects in the title to real property in which the insured has an interest." 1

Joyce Palomar, *Title Insurance Law* § 1:8 (2010); *see CMEI, Inc. v. American Title Ins. Co.*, 447

So.2d 427, 428 (Fla. Dist. Ct. App. 1984) (describing Florida title insurance policies as contracts of

indemnity). If a title defect is discovered, the policy provides an insurer numerous options to satisfy

its obligations and avoid breaching the contract. Palomar, *supra*, § 10:2. For example, the insurer

may pay the insured the full policy amount, take affirmative action to clear the defect, or (for

mortgagee policies) purchase the indebtedness secured by the insured mortgage.[6] *Id.* If the insurer

fully performs one of these options, it has fulfilled its contractual obligations. *See Security Title*

*Guaranty Corp. of Baltmore v. McDill Columbus Corp.*, 543 So.2d 852, 854 (Fla. Dist. Ct. App.

1989) (insurer-insured relationship terminated after settlement with the insured).

**b.      Reasonable Diligence**

Approximately one year after learning of the title defects, Ticor took steps to cure the title

defects under the option provided by Paragraph 4(b), which reads in pertinent part:

---

[6]Several provisions in the policy (found at Dkts. 23-1 and 35-1) provide Ticor with options to fulfill
its contractual obligations.  *See, e.g.*, Paragraphs 4(b) (right to establish title or insured mortgage as insured);
6(a)(i) (right to pay the "amount of insurance" with costs, attorneys' fees and expenses); 6(a)(ii) (right to
purchase the secured indebtedness); 6(b)(i) (right to pay or otherwise settle with other parties); 6(b)(ii) (right
to pay or otherwise settle with the insured).

> The Company [Ticor] shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured. . . . *If the Company shall exercise its rights under this paragraph, it shall do so diligently*.

(Dkts. 23-1, at 5; 35-1, at 9) (emphasis added). Citing the italicized language of Paragraph 4(b), Premier asserts that Ticor imposed a duty on itself to act with reasonable diligence when curing title defects. This duty to act with reasonable diligence is reinforced by the Limitation of Liability section, in particular Paragraph 8(a), which reads as follows:

> If the Company [Ticor] establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, or otherwise establishes the lien of the insured mortgage, all as insured, *in a reasonably diligent manner by any method*, *including litigation and the completion of any appeals therefrom*, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

*Id.* (emphasis added). Based on these provisions, Premier argues that Ticor breached this self-imposed duty of reasonable diligence by delaying its efforts to cure the title defects for nearly a year after learning of them. Ticor's anthem in its summary judgment papers is that the very next paragraph of the Limitation of Liability section, Paragraph 8(b), absolves Ticor of all liability because it cured one of the defects by means of litigation. The paragraph in question reads:

> *In the event of any litigation* by the Company or with the Company's consent, the Company shall have *no liability for loss or damage until there has been a final determination* by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured.

*Id.* (emphasis added). To resolve Ticor's motion, then, it is necessary to construe the meaning of these three policy provisions under Florida law.

Although the Florida Supreme Court has not addressed this particular controversy, that court has clearly articulated the governing principles of insurance contract interpretation. "In interpreting

7

insurance contracts, this Court follows the generally accepted rules of construction, meaning that insurance contracts are construed according to their plain meaning, with any ambiguities construed against the insurer." *Penzer v. Transp. Ins. Co.*, 29 So.3d 1000, 1005 (Fla. 2010) (quoting *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So.2d 871, 877 (Fla. 2007)) (internal quotation marks and brackets omitted). Policy provisions are considered ambiguous "[i]f the relevant policy language is susceptible to more than one reasonable interpretation." *Id.* (quoting *Garcia v. Fed. Ins. Co.*, 969 So.2d 288, 291 (Fla. 2007)). However, "if a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Garcia*, 969 So.2d at 291 (quoting *Taurus Holdings, Inc. v. U.S. Fidelity & Guaranty Co.*, 913 So.2d 528, 532 (Fla. 2005)). Finally and perhaps most importantly in this case, "in construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." *U.S. Fire Ins. Co.*, 979 So.2d at 877.

With these principles in mind, the court begins with Paragraph 4(b), which can only be read in one way:  once a title insurer such as Ticor pursues its option to establish the title (and the insured mortgage) as insured, the insurer incurs the duty to act with diligence. The last sentence of this paragraph specifically provides, "If the Company shall exercise its rights under this paragraph [(i.e., establishes the title or insured mortgage as insured)], it shall do so diligently." The second "shall" indicates a duty on Ticor's part. *See* Barlow Burke, *Law of Title Insurance* § 6.05 (2010) (the right to establish the title as insured "is a right coupled with a duty—that is, a duty to provide some form of suitable relief to an insured, using prudent judgment and reasonable diligence"); Palomar, *supra*, §§ 10:5 ("If the insurer did not act to cure or establish the title within a reasonable time or in a reasonably diligent manner, the insurer's breach of the policy condition may make the insurer liable

for interim losses of the insured."); 11:12 ("If a title insurer intends to act to establish the title as insured, the insurer must do so within a reasonable time after being notified of the title defect."). Similar use of the word "shall" is used elsewhere in the policy to describe Ticor's *duty* to defend. *See* Paragraph 4(a) ("the Company . . . shall provide for the defense of an insured in litigation . . ."). Moreover, one lower Florida  appellate court has recognized that an insured may have a claim for an insurer's breach of this duty of diligent cure. *Cocoa Properties, Inc. v. Commonwealth Land Title Ins. Co.*, 590 So.2d 989, 991 (Fla. Dist. Ct. App. 1991) ( the insured "has a claim if [the title insurer] did not remove the title defect, by litigation or otherwise, within a reasonable length of time after receiving notice of the defect.").

This covenant to act diligently goes hand in hand with the limitation on liability in Paragraph 8(a). That paragraph plainly provides that Ticor will have "fully performed its obligations" and "shall not be liable" if it "establishes the title . . . or otherwise establishes the lien of the insured mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom." Thus, under Paragraphs 4(b) and 8(a), if a title insurer *diligently* establishes the title (or insured mortgage) as insured, then it has fully performed its duty in Paragraph 4(b), and is not liable for breach under Paragraph 8(a). However, if the insurer establishes the title (or insured mortgage) as insured *without diligence*, it has breached its self-imposed duty in Paragraph 4(b), and Paragraph 8(a) does not shield it from liability.[7]

---

[7]In making these conclusions, the court notes that Paragraph 4(b) requires the insurer to act "diligently," whereas the condition in Paragraph 8(a) refers to action taken "in a reasonably diligent manner." It is doubtful whether there is a meaningful difference between "diligence" and "reasonable diligence." Could a title insurer act with unreasonable diligence? Any possible difference between these terms is academic at best, and not material here.

What effect does Paragraph 8(b) have on the harmony between Paragraphs 4(b) and 8(a)? Two Florida intermediate appellate courts[8] have addressed language substantially similar to Paragraph 8(b). In *Lawyers Title Insurance Co. v. Synergism One Corp.*, 572 So. 2d 517 (Fla. Dist. Ct. App. 1990), Lawyer's Title issued Synergism a title insurance policy containing a limitation on liability similar to Paragraph 8(b) above. The survey relied on by Lawyer's Title failed to disclose that an abutting landowner farmed a portion of the land. Synergism sued to eject the farmer, and the dispute was ultimately settled on appeal by paying the farmer for a quitclaim deed. Synergism sued Lawyer's Title for construction delays incurred while waiting for the litigation to conclude. The Fourth District Court of Appeals held that the limitation on liability equivalent to Paragraph 8(b) applied to preclude liability. In a terse opinion, the court declared that a title policy "indemnifies rather than guarantees the state of the insured title," and that since there was litigation, the insured's claim only lies after an adverse title determination by a court. *Id.* at 518.

In *Cocoa Properties, Inc. v. Commonwealth Land Title Insurance Co.*, 590 So. 2d 989 (Fla. Dist. Ct. App. 1991), Commonwealth issued a title insurance policy to Cocoa Properties, which entered into a contract to sell the property. Before the sale was completed, Barnett Bank of Tampa sought to foreclose a mortgage on the property. The mortgage was not listed as an exception on the policy. Commonwealth defended the mortgage foreclosure action, and Barnett obtained a final judgment in its favor. A subsidiary of Commonwealth purchased an assignment of the judgment and voluntarily dismissed the foreclosure action. Cocoa Properties sued Commonwealth, and the trial

---

[8]Ticor cites *Huntleigh Park v. Stewart Title Guaranty Co.*, 717 So.2d 1037 (Fla. Dist. Ct. App. 1998) to support its interpretation of the relevant policy provisions. However, *Huntleigh Park* is a per curiam decision with no published opinion, and thus is not considered in the court's *Erie* guess. *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 565 (5th Cir. 2004) (discounting unpublished cases not providing persuasive argument).

court held that recovery was precluded. The Second District Court of Appeals held that the trial court erred. Since Commonwealth ultimately purchased an assignment of the judgment and dismissed the case, there was no final determination, either adverse or favorable, regarding title.[9] Since the claim was not precluded, there was a fact issue remaining as to whether Commonwealth acted within a reasonable time[10] to cure the title defect.

While both cases are instructive, neither case involved the same stark conflict presented by the case at bar. On its face, Paragraph 8(b) cannot be literally applied without butting heads with Paragraphs 4(b) and 8(a). These latter paragraphs outline the parameters of a self-imposed duty: if the title insurer undertakes its option to establish the title (or insured interest) as insured, it owes a duty to the insured to act diligently. But Paragraph 8(b) mentions no such duty, and provides that in the event of litigation (including curative litigation) by the title insurer, it is not liable "until there has been a final determination . . . adverse to the title or to the lien of the insured mortgage, as insured." That is, contrary to Paragraphs 4(b) and 8(a), Paragraph 8(b) appears to relieve the title insurer of liability if it undertakes litigation to cure covered title defects and obtains a final judgment in its favor, regardless of whether it has acted with diligence.

This broad reading of Paragraph 8(b) is the interpretation advanced by Ticor. Premier, on the other hand, interprets Paragraph 8(b) more narrowly to preclude liability for losses occurring during the pendency of litigation, thereby leaving room for Paragraphs 4(b) and 8(a) to operate. Because

---

[9]To be sure, the court noted that Commonwealth's liability for delays (including those occurring before the commencement of litigation) would have been precluded if Commonwealth pursued litigation to completion and the court issued a final determination in favor of Cocoa Properties's title. However, this statement is dicta, and is contrary to the court's holding.

[10]The 1970 ALTA policy involved in *Cocoa Properties* referred to the insurer acting "within a reasonable time." In 1992, ALTA changed this language to "in a reasonably diligent manner."

more than one reasonable interpretation may be ascribed to these three provisions, they are ambiguous, *see Penzer*, 29 So.3d at 1005, and this court must fall back on principles of insurance contract interpretation outlined by the Florida Supreme Court.

Two of those principles are determinative here:  reading the policy as a whole to give effect to every provision, and interpreting ambiguous provisions against the insurer. *See U.S. Fire Ins. Co.*, 979 So.2d at 877. Ticor's interpretation effectively reads out the unqualified diligence language in Paragraphs 4(b) and 8(a). On its reading, the duty to act with diligence applies only where the title insurer chooses to cure by means other than litigation. This conflicts with Paragraph 4(b), which imposes the duty of diligence whenever the company "exercises its rights under this paragraph," including "the right to institute and prosecute any action or proceeding" to cure a title defect. It also renders nugatory the following quoted passage in Paragraph 8(a), which limits the liability of an insurer who cures title defects "in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom." Moreover, Ticor's interpretation construes the provisions against the insured, and would allow the title insurer to do nothing for years after learning of title defects, with no recourse to the insured, as long as the insurer eventually institutes litigation to cure title. Finally, it is unclear why the policy should be read to encourage litigation as opposed to other means of curing title. Surely other means (such as obtaining voluntary quitclaim deeds from persons with potentially adverse property interests) would often be preferable because they would conserve judicial resources and minimize attorneys fees.

By the same token, it does minimal violence to the language of Paragraph 8(b) to limit its scope to shielding the insurer against losses incurred while curative litigation runs its course. That was the practical effect of the holding in *Synergism*—that the insured's claim for damages due to

12

construction delays during the pendency of litigation was precluded.[11] Moreover, Paragraph 8(b)'s use of the word "until" rather than "unless" suggests that the limitation is temporal and not absolute in nature. This reading construes the provisions against the insurer, and gives effect to (and preserves much of the harmony between) Paragraphs 4(b) and 8(a), while still giving some effect to Paragraph 8(b).[12] Finally, this interpretation addresses Ticor's concerns, expressed in oral argument, regarding the unpredictable length of curative litigation.

Applying this interpretation to the case at bar, Premier's claims for losses arising out of Ticor's delays in curing the title defects (both in commencing litigation and in obtaining the quitclaim deed) remain for trial. *See Cocoa Props., Inc.*, 590 So.2d at 991 (whether the title insurer established title in a reasonable time is a fact question). However, because Ticor cured the second title defect by litigation, Paragraph 8(b) precludes any claim for losses that occurred while the lawsuit was pending. Ticor's motion for summary judgment is granted to the extent Premier's claim seeks losses during the pendency of that litigation.

### 3.    Premier's Loss Under the Policy

Alternatively, Ticor contends that Premier is unable to prove any compensable damages under the terms of the title insurance contract.

Ticor relies on a Paragraph 7(a)(iii) and case law from various states to argue that the measure of Premier's loss is zero. Specifically, Paragraph 7(a) provides that Ticor's liability under

---

[11]*See* note 8 *supra* regarding dicta in *Cocoa Properties, Inc. v. Commonwealth Land Title Insurance Co.*, 590 So. 2d 989 (Fla. Dist. Ct. App. 1991).

[12]Premier points to *Hatch v. First American Title Insurance Co.*, 895 F. Supp. 10 (D. Mass. 1995) and *Hodas v. First American Title Insurance Co.*, 696 A.2d 1095 (Me. 1997), suggesting that Paragraphs 4(b) and 8(a) should be interpreted to allow a claim if the title insurer does not *cure* the title defects by litigation (rather than institute litigation) with diligence. However such an interpretation would deprive Paragraph 8(b) of any effect.

13

the policy "shall not exceed . . . (iii) The amount of the unpaid principal indebtedness secured by the insured mortgage . . . at the time of the loss or damage insured against by this policy occurs, together with interest thereon." Paragraph 7(a)(iii). In the same vein, a Florida appellate court has stated, "A mortgagee's loss is measured by the extent to which the insured debt is not repaid because the value of security property is diminished or impaired by outstanding lien encumbrances or title defects covered by the title insurance." *CMEI, Inc. v. American Title Ins. Co.*, 447 So.2d 427, 427 (Fla. Dist. Ct. App. 1984). A hanging paragraph at the end of section 7 and Paragraph 2(a) provide that coverage under the policy continues in favor of an insured who acquires an interest in the land by foreclosure or conveyance in lieu of foreclosure.

With these policy provisions in mind, Ticor first points to *Cale v. Transamerica Title Ins.*, 275 Cal. Rptr. 107 (Cal. Ct. App. 1990) to argue that in cases where an insured mortgagee forecloses on the property, coverage under the policy continues, and the insured must subsequently sell the property to realize a loss, because only then will it be determined that the proceeds from the property are inadequate to pay the outstanding indebtedness. Since Premier took a deed in lieu of foreclosure and is still the fee simple owner of the property, Ticor argues, Premier must subsequently sell the property in order to avoid Paragraph 7(a)(iii)'s limitation on liability.

Ticor also points to *Karl v. Commonwealth Land Title Ins. Co.*, 24 Cal. Rptr. 2d 912 (Cal. Ct. App. 1993) and *First Internet Bank of Indiana v. Lawyers Title Ins. Co.*, No. 1:07-cv-0869-DFH-DML, 2009 WL 2092782 (S.D. Ind. July 13, 2009) to argue that Premier's damages should be measured on the day it took the deed in lieu of foreclosure, considering the property's fair market value on that date. Ticor argues that since the title defects were cured before that date, to the extent the insured debt is not repaid because of a decrease in the property's value,

14

that decrease is not due to outstanding title defects. Thus, Ticor argues, Premier has not suffered a compensable loss under the title policy, as construed in *CMEI* and the other cases mentioned above.

The problem with this line of authority is that none of the cited cases deal with the type of claim presented by Premier, alleging lack of reasonable diligence in curing title defects. For the very reasons Ticor points out, this is not the usual sort of title policy breach claim, where the insured mortgagee suffered a loss due to uncured title defects. Premier's claim is not that Ticor breached its promise to insure against defective title. Rather, Premier asserts that Ticor failed to honor a separate and distinct promise contained within the policy, i.e. its promise to act with reasonable diligence when acting to cure title defects.

Ticor is correct that Paragraph 7 does fix the measure and extent of damages "suffered by reason of matters insured against by this policy and only to the extent herein described." But it seems a stretch to apply this limitation to contract claims involving failure to cure with reasonable diligence, which are not readily classified as "matters insured against by this policy." If Paragraph 7's provisions were to be applied to such a claim, then the insured would be left without a remedy when an insurer unreasonably delayed in responding to title defects, thereby rendering illusory its promise to act with reasonable diligence.

The parties have not cited, and the court has not found, any Florida or other state court case specifically addressing the measure of damages in a claim against the title insurer for failing to cure title defects diligently.[13] Given this dearth of case law directly on point, it is useful to consider an analogous situation – a title insurer's breach of its duty to defend. Courts considering damages for

---

[13]Although *Hodas v. First American Title Ins. Co.*, 696 A.2d 1095 (Me. 1997) discussed the measure of the insured's losses after upholding the trial court's finding that the insurer failed to act within a reasonable time, the plaintiff in that case only asserted a breach of insurance contract claim as to title.

the insurer's breach of its duty to defend have distinguished between claims involving the insurer's

"breach of the policy as to title" and those involving "breach of the covenant in the policy." *See* V.

Woerner, *Measure, Extent or Amount of Recovery on Policy of Title Insurance*, 60 A.L.R. 2d 972

§§ 2, 8 (1958); Palomar, *supra*, § 10:18. Although the policy may impose limits on an insured's

losses for breach of the policy as to title,[14]

> "it is implicit in all the cases which involve [a breach of the insurer's covenant to defend] as well as a loss or damage to an insured owner or mortgagee resulting from a defect in the insured title that damages for breach of the covenant to defend are separate and distinct from damages for a defect in title, and that damages for breach of the covenant to defend may be recovered without regard to the usual policy provision limiting the insurer's liability to a specified amount, such limitation upon liability being tacitly deemed applicable only to loss or damage resulting from a defect in title.

60 A.L.R. 2d 972 § 8. As explained by one authority on title insurance policies:

> It is an axiom of general insurance law that an insurer who has materially breached its contract to defend and indemnify cannot require its insured to comply with other contract terms. Therefore, where the insurer has breached its contract, the insured's claim may not be limited to the amount policy conditions provide when the insurer is paying the claim according to the policy's terms. Instead, the insured may be entitled to all foreseeable damages resulting from the title insurer's breach of contract, including consequential and incidental damages.

Palomar, *supra*, § 10:18.

By parity of reasoning, then, a title insurer who has materially breached its covenant to act

with reasonable diligence in curing title defects cannot require its insured to comply with other

---

[14]For examples of Florida cases applying loss limitations to claims by insured mortgagees on the title, see *CMEI*, 447 So.2d at 428; *First Commerce Realty Investors v. Peninsular Title Ins. Co.*, 335 So.2d 510, 511 (Fla. Dist. Ct. App. 1978); *Ring v. Home Title Guaranty Co.*, 168 So.2d 580, 581 (Fla. Dist. Ct. App. 1964); *Florida Home Ins. Co. v. Braverman*, 163 So.2d 512, 513 (Fla. Dist. Ct. App. 1964); *Goode v. Federal Title and Ins. Corp.*, 162 So.2d 269, 270–71 (Fla. Dist. Ct. App. 1964).

contract terms, such as policy loss limitations when the insurer is paying the claim according to the policy's terms.

The court concludes that, to the extent Premier asserts a claim based on Ticor's breach of a covenant to act diligently, Paragraph 7(a)(iii)'s limitation on losses under the policy do not apply.[15] In the absence of the policy's loss limitations, the default rule entitling the non-breaching party to measurable compensatory damages appears to govern. *See* 17 Fla. Jur. 2d *Damages* § 18 (2011) (citing *MCI Worldcom Network Servs., Inc. v. Mastec, Inc.*, 995 So.2d 221 (Fla. 2008); *MSM Golf, L.L.C. v. Newgent*, 853 So.2d 1086 (Fla. Dist. Ct. App. 2003)). Since fact issues exist as to Premier's damages resulting from Ticor's alleged breach of this covenant,[16] summary judgment is not appropriate on this ground.

---

[15] The court does not interpret Premier's amended complaint to assert a claim for breach of policy as to title, which would be precluded by Paragraph 7.

[16] Despite this ruling, the court has serious reservations about the damage model Premier expects to present at trial. Premier alleges that if Ticor had cured the title defects diligently, it would have foreclosed on the property earlier and sold it for $x. However, since Ticor allegedly did not act diligently, Premier was unable to take a deed in lieu of foreclosure until August of 2010, and if the property were sold on that date, the sale price would have been $y, which is lower than $x, and the difference ($x - $y) would be the loss resulting from Ticor's failure to act diligently.

This calculation appears to be an exercise in speculation based upon a stack of hypothetical "findings," including: (1) the date on which both defects would have been cured assuming Ticor acted with diligence; (2) a finding that had Ticor cured the defects by this date, Premier would have foreclosed on the property, (3) a finding that after the foreclosure, Premier would have sold the property, (4) the date on which Premier would have sold the property, (5) the price for which the property would have sold ($y), and (6) a finding that the $y value is less than the $x value. Although Premier's counsel analogized this damage model in oral argument to a failure to execute a stock sale, Premier's counsel conceded that it had no prospective buyers when it initially sought to take a deed in lieu of foreclosure, making the $x figure even more speculative. Finally, additional issues are raised because Premier is still the fee simple owner of the property. If Premier holds the property and eventually sells it for a gain, has it suffered any damages (in fact, hasn't it benefitted) from Ticor's alleged failure to cure the title defects diligently?

The court need not address these difficult issues now, as Ticor's motion did not seek summary judgment on these grounds. Even so, it does seem appropriate to note these potentially serious obstacles to any recovery on this claim.

17

## Conclusion

For the foregoing reasons, Ticor's motion for summary judgment (Dkts. 23, 35) is granted in part and denied in part.

Signed at Houston, Texas on June 9, 2011.


Stephen Wm Smith
United States Magistrate Judge