IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **PREMIER TIERRA HOLDINGS, INC.** | § | |
| | § | |
| **Plaintiffs** | § | |
| | § | |
| v. | § | Civil Action No. 4:09-cv-02872 |
| | § | |
| **CHICAGO TITLE INSURANCE** | § | |
| **COMPANY SUCCESSOR BY MERGER** | § | |
| **TO TICOR TITLE INSURANCE** | § | |
| **COMPANY OF FLORIDA, INC.** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## Plaintiff's Response to Defendant's Second
## Motion for Summary Judgment and Brief in Support

Premier Tierra Holdings, Inc. ("Plaintiff") hereby submits this Response to Defendant Chicago Title Insurance Company's ("Defendant") Second Motion for Summary Judgment and Brief in Support.

### I. SUMMARY OF ARGUMENT

1.  The Defendant appears to misunderstand the legal theory behind Plaintiff's claim prior to and subsequent to the Court's June 9, 2011 summary judgment ruling. Plaintiff has provided sufficient evidence that its damages, as limited by the Court's June 9, 2011 summary judgment ruling, are $755,000.00 (plus incidental damages of approximately $25,000.00 in taxes).

2.  Furthermore, contrary to the Defendant's assertions, the limitation of liability found in Paragraph 7 of the Policy at issue is not applicable to Plaintiff's claim for damages. In addition, the Defendant's argument that Plaintiff's damages are too speculative is contradicted by substantial legal authority regarding the correct measure of contractual damages and the ability to use appraisals when

measuring contractual damages. Moreover, there is no legal support for the Defendant's alternative measure of damages and such measure would, if valid, increase Plaintiff's recoverable damages.

3. Finally, the Defendant's assertion that the Deed in Lieu of Foreclosure eliminated the Defendant's liability is not supported by the Policy or common sense and is contracted by the Defendant's own claims manual.

## II. SUMMARY JUDGMENT EVIDENCE

4. As part of its Response, Plaintiff incorporates and relies upon the following summary judgment evidence, which is attached to this Response unless otherwise indicated:

**Exhibit A:** Mortgagee's policy of title insurance # LP- 12-1763-933 attached to Defendant's Motion as Exhibit A ("Policy")

**Exhibit B:** Deposition of Jennifer Hoff ("Hoff Depo.")

**Exhibit C:** Supplemental Expert Report from Robert Philo ("Philo Supp. Report")

**Exhibit D:** Letter Summary for Shirey Appraisal for October 2009[1] and associated testimony ("October 2009 Appraisal")

**Exhibit E:** Letter Summary for Shirey Appraisal for April 2010[2] and associated testimony ("April 2010 Appraisal")

**Exhibit F:** Page from Defendant's Claims Handbook ("Claims Manual")

## III. NATURE AND STAGE OF THE PROCEEDINGS

5. Plaintiff originally filed suit based on breach of the Policy on September 4, 2009. Plaintiff's claim was premised on Ticor breaching the Policy by failing to take any action after receiving notice of title defects that made the property associated with the Title Policy unmarketable, causing Plaintiff a loss measured by the entire market value of the property.

---

[1] The over one hundred pages containing the detailed appraisal information and analysis had been omitted for convenience of electronic filing, but are available at the Court's request.

[2] The over one hundred pages containing the detailed appraisal information and analysis had been omitted for convenience of electronic filing, but are available at the Court's request.

6. After being served with this action and answering, Defendant proposed in December 2009 that it make efforts to cure the title defects. Accordingly, Plaintiff and Defendant agreed to request an abatement of this action while those efforts proceeded, which this Court granted after Plaintiff and Defendant jointly consented that this Court preside over this action rather than the original district court judge assigned to this case. All of the title defects were cured in or about the summer of 2010 and Plaintiff took title to the property associated with the Policy in August 2010. Plaintiff subsequently elected to pursue its breach of contract action under the different factual allegations that Defendant had cured the title defects, but was still liable to Plaintiff for damages resulting from the title defects because Defendant had not cured the title defects in a reasonably diligent manner as required by Paragraph 8(a) of the Policy.

7. On December 14, 2010, this Court entered a scheduling order permitting Plaintiff to file an amended pleading, setting various deadlines, and setting a trial date of December 12, 2011. Plaintiff timely filed its Amended Complaint and Defendant timely filed its Amended Answer. On June 9, 2011, the Court granted summary judgment against Plaintiff, in part, by ruling that Plaintiff's claim was not a claim under the Policy, but a claim for breach of a covenant to cure reasonably diligently. The discovery and motions deadlines have passed. However, the Defendant recently filed a Motion to Compel after the motions deadline, which is not set for submission until after the Motion to which this Response is directed.

### IV. FACTUAL BACKGROUND

8. The Court is, by now, more familiar with the circumstances of this lawsuit than it probably would prefer. Nonetheless, Plaintiff generally refers to the Court to its First Amended Complaint for the general relevant facts and the brief factual recitations subsumed in Plaintiff's legal argument below.

## V. ISSUES TO BE RULED UPON BY THE COURT AND STANDARD OF REVIEW

9. In this case, the separate issues being asserted by the Defendant are not entirely clear. Nonetheless, it appears that Defendant is largely asserting legal arguments rather than questioning whether Plaintiff has insufficient evidence on a particular element of Plaintiff's claim. Therefore, the following issues raised in Defendant's Motion are questions of law:

**Issue 1:** Does Paragraph 7 of the Policy apply to limit Plaintiff's damages as a matter of law?

**Standard:** Summary judgment is proper if the pleadings, evidence, if any, and other matters presented to the court show that there is no genuine issue of material fact, and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986). When the material facts are not in genuine dispute, the issue is a question of law which would be subject to a de novo review. *Am. Indem. Lloyds v. Travelers Prop. & Cas. Ins. Co.*, 335 F.3d 429, 435 (5th Cir.2003).

**Issue 2:** Are any of the appraisals relied upon by Plaintiff to measure its damages too speculative to be sufficient evidence of Plaintiff's damages as a matter of law?

**Standard:** Same.

**Issue 3:** Is the proper measure of Plaintiff's damages the difference between the appraised value of the Property at issue in October 2009 and the price for which Plaintiff ultimately sells the Property?

**Standard:** Same.

**Issue 4:** Does the formal, but not actual, discharge of the debt owed to Plaintiff as a result of the Deed in Lieu of Foreclosure eliminate the Defendant's liability as a matter of law?

**Standard:** Same.

## VI. ARGUMENT AND AUTHORITIES

10. The Defendant's arguments in its Motion rely upon fundamental misunderstandings about the Policy and well-established legal rules relating to contract law. Accordingly, in addition to refuting the Defendant's arguments, Plaintiff will explain the law and theories supporting Plaintiff's claim as it existed prior to and subsequent to the Court's June 9, 2011 summary judgment order for the benefit of the Court and, hopefully, to avoid additional misunderstandings by the Defendant.

**A. Plaintiff's claim prior to the Court's June 9, 2011 summary judgment order was for the Defendant's breach of its obligation under the Policy to indemnity Plaintiff's loss resulting from insured title issues.**

11. Plaintiff's claim prior to the Court's June 9, 2011 summary judgment order was for the Defendant's breach of its obligation to indemnify Plaintiff because Defendant refused to pay Plaintiff for the losses it suffered that were insured by the Policy. Under the Policy, Plaintiff was insured by Defendant "against loss or damage … sustained or incurred by the insured by reason of … any defect in or lien or encumbrance on the title; [or] Unmarketability of the title." (Policy at 1, Ex. A.) Plaintiff's intention prior to receiving notice of the title issues with regard to the Property (whether characterized as creating defects or unmarketability) was to take a deed to the Property and to sell it for its appraised (i.e. fair market) value. (Hoff Depo. 78:22-79:7, Ex. B.) However, Plaintiff could not take fee simple title to and sell the Property while the title issues remained. (Hoff Depo. 61:20-62:2, Ex. B.)

12. Defendant eventually cured the title issues in the summer of 2010, but Plaintiff had sustained a loss due to the title issues because (1) the sales price of the Property was the only recovery Plaintiff was going to receive on its insured loan; (2) the fair market value of the Property had declined dramatically during the time period between the date the title issues were discovered and the date the title issues were cured; and (3) the existence of the title issues prevented Plaintiff from selling the Property. Plaintiff submitted a claim for indemnity to Defendant for Plaintiff's losses it suffered due to the title issues, which consisted of the value of the Property lost while the title issues remained and the taxes it incurred by having to maintain the Property instead of taking a deed and selling the Property. While acknowledging that Condition & Stipulation 8(a) of the Policy limited the liability Defendant would ordinarily be liable under the Policy if Defendant removed the title defect or cured the unmarketability of title in a reasonably diligent manner, Plaintiff contended that Defendant was still liable because Defendant had not cured the title issues in a reasonably diligent manner.

Defendant refused to indemnity Plaintiff under the Policy, which was a breach of the Policy if Defendant was not diligent in curing the title issues.

13. The legal interpretation of the Policy under which Plaintiff was operating was that Paragraphs 8(a) and 8(b) were mutually exclusive (i.e. only one clause applied to each title issue)[3] clauses that would determine any limitations on the Defendant's indemnity obligation. Paragraph 8(b), if applicable, was a temporal limitation that delayed the Defendant's liability for a title issue it could not cure until the Defendant's inability to cure had been conclusively established and all appeals exhausted. Paragraph 8(a) was a liability limitation that acted as an all-or-nothing switch: if a title issue was cured reasonably diligently, then Defendant's indemnity liability for that title issue was eliminated completely. On the other hand, if the title issue was **not** cured reasonably diligently, Paragraph 8(a) would not limit the Defendant's indemnity liability in any way. Under this theory, Plaintiff's damages would have been the loss associated with the Defendant's breach of its obligation to indemnity Plaintiff (i.e. its failure to pay Plaintiff what it was owed), which would include the loss Plaintiff suffered as a result of the title issues from the time the title issues were discovered to the time the title issues were cured along with interest on that amount.[4]

**B.  Plaintiff's claim subsequent to the Court's June 9, 2011 summary judgment order was for the Defendant's breach of its covenant to cure reasonably diligently.**

14. The Court rejected, in part, the legal interpretation of the Policy advanced by Plaintiff by concluding that Plaintiff's claim was not for breach of the indemnity obligation under the Policy, but was limited to a claim for Plaintiff's loss associated with Defendant's breach of its covenant to cure

---

[3] Conceivably, the structure of the Policy could complicate the determination of the monetary value of the insurer's indemnity obligations if there were more than one title issue and Paragraph 8(a) eliminated liability for one of the title issues while the indemnity obligation remained for other title issues either because the other title issues had not been cured with reasonable diligence under Paragraph 8(a) or could not be cured at all under Paragraph 8(b). This theoretical complication would not have been an issue in this case even though there were multiple title issues because the facts would not support differing applications of Paragraph 8 to each title issues (i.e. either the curative efforts for all the title issues were reasonably diligent or they were not).

[4] Plaintiff's loss could also include the attorneys' fees it incurred in this litigation under Florida law, but those fees are separately recoverable by statute, so the issue of whether they qualify for damages is irrelevant.

the title issues reasonably diligently. (Memorandum and Order, Document 45 at 15.) As a result, the Court ruled that the default rule for breach of contract damages applied. (*Id*.at 17.)

15. Generally, an award of damages for breach of contract is intended to place the injured party in the position he or she would have been in had the breach not occurred. *Mnemonics, Inc. v. Max Davis Assocs, Inc.*, 808 So.2d 1278, 1280 (Fla. Dist. Ct. App. 2002). Damages recoverable by a party injured by a breach of contract are those that (1) naturally flow from the breach and (2) can reasonably be said to have been contemplated by the parties at the time the contract was entered into. *Id.* These two categories are sometimes referred to as general and special (i.e. consequential) damages. *Florida East Coast Ry. Co. v. Beaver Street Fisheries, Inc.*, 537 So.2d 1065, 1068 (Fla. Dist. Ct. App. 1989); RESTATEMENT (SECOND) OF CONTRACTS § 351 note b (1981). The rule for calculating general damages involving defective performance is equal to the loss caused by the failure of, or deficiency in, that performance. RESTATEMENT (SECOND) OF CONTRACTS § 347 note b (1981).

16. Such damages are measured by the difference between the market value of the Property if the Defendant had not breached its covenant and the market value of the Property in its damaged condition. *cf. Beaver Street Fisheries, Inc.*, 537 So.2d at 1068 (measuring damages for breach of duty of reasonable care in transporting goods). Florida law will accept any evidence logically tending to establish a correct estimate of the value of property, which includes appraisals of property at or reasonably near the date at issue. *Getelman v. Levey*, 481 So.2d 1236, 1240 (Fla. Dist. Ct. App. 1985). Thus, for example, an appropriate measure of damages for a wrongful lis pendens filing is appraisal evidence regarding a drop in market value between the time the lis pendens was recorded and the time it was lifted. *Haven Center, Inc. v. Meruelo*, 995 So.2d 1166, 1168 (Fla. Dist. Ct. App. 2008).[5]

---

[5] Plaintiff could not locate any Florida case law applying the contractual damages measure to a breach of a covenant in a title policy. However, the lis pendens damages measure would appear to be a useful comparison because the

17. In this case, Plaintiff's evidence indicates that the title issues would have been resolved on or about October 2009 because reasonably diligent curative efforts by the Defendant would have taken no longer than approximately six months from the date the Defendant received notice of the title issues.[6] (Philo Supp. Report, Ex. C.) Thus, if the Defendant had performed its obligation to act reasonably diligently, Plaintiff could have taken fee simple title to the Property in October 2009. Instead, due to the title issues, Plaintiff could not have taken fee simple title to the Property until June 2010.[7] However, the Court's June 9, 2011 summary judgment order also limited the back end of Plaintiff's damage period to April 12, 2010 (the day before title litigation was initiated).[8] Thus, the proper measure of general damages for Plaintiff's claim is the difference between the fair market value of the Property in October 2009 and the fair market value of the Property in April 2010. The appraised fair market value of the Property in October 2009 was $1,925,000.00 and the appraised fair market value of the Property in April 2010 was $1,170,000 yielding Plaintiff general damages of $755,000.00. (October 2009 Appraisal, Ex. D; April 2010 Appraisal, Ex. E.)

**C.     The Policy's limitation of liability provision in Paragraph 7 to measure damages is inapplicable to Plaintiff's claim.**

18. While it is unclear exactly how Defendant is relying upon the Policy's limitation of liability provision in Paragraph 7 to support its Motion, such reliance is legally inappropriate. Initially,

---

delay in a potential sale due to title issues is equivalent to the delay caused by a lis pendens in that neither of them legally prevent a sale, but do prevent a sale as a practical matter because few, if any, buyers are willing to undertake the risk of buying property subject to a title issue or lis pendens.

[6] There is no indication that Defendant's Motion is challenging Mr. Philo's conclusions. Instead, the Defendant is challenging the proper legal measure of Plaintiff's damages and/or the sufficiency of using an appraisal to measure Plaintiff's damages.

[7] Plaintiff's original appraisal under its theory prior to the Court's June 9, 2011 order was for August 2010 when Plaintiff actually took title to the Property because the case law indicated that was the end date for measuring a loss under a title policy. Plaintiff did not acquire a June 2011 appraisal after the Court's ruling because the Court's ruling also limited Plaintiff's period for measuring damages to the date title litigation as initiated, April 13, 2010.

[8] Plaintiff admittedly does not understand the Court's reason for limiting Plaintiff's damages to the period of delay caused by the failure to cure reasonably diligently **and** limiting that period to April 12, 2010 as the time period between April 13, 2010 and June 2010 when all the defects were cured is included in the six month period Plaintiff contends would have elapsed with reasonably diligent curative efforts. Nonetheless, Plaintiff has crafted its damage model to the Court's summary judgment ruling as actually written.

Defendant's reliance on Paragraph 7 is legally inappropriate because the Court has already ruled that this provision is inapplicable to the breach of contract claim remaining to Plaintiff after the Court's June 9, 2011 summary judgment order. (Memorandum and Order, Document 45 at 16-17.); Moreover, contrary to Plaintiff's repeated assertions, this limitation of liability provision **does not** measure Plaintiff's loss, but merely limits the Defendant's liability under the Policy "no matter the extent of actual monetary damages [the insured] might have incurred due to an insured loss." *Miller v. Ticor Title Ins*. Co., 93 P.3d 88, 91 (Or. Ct. App. 2004) (comparing the provision describing insurable losses with the provision limiting an insurer's liability for those losses). Further, even assuming this limitation of liability provision applied, the amount of unpaid indebtedness associated with Plaintiff's loan is over $4,000,000.00, which is far more than Plaintiff's claimed damages. (Hoff Depo. 68:13-70:21, Ex. B.) Therefore, Paragraph 7 of the Policy is inapplicable to Plaintiff's claim.

D.  **Plaintiff's damages are not overly speculative and the Defendant's proposed damage measure is incorrect.**

19. It is difficult to follow the exact argument the Defendant's Motion is asserting, but the Defendant appears to be arguing that Plaintiff's damages are overly speculative because it cannot prove that it would actually have sold the Property for the appraised value in April 2010. Instead, the Defendant asserts that Plaintiff's damages are measured by the difference between the appraised value of the property in October 2009 and the sale price ultimately received by the Plaintiff whenever the Property is sold.

20. Defendant's argument would require the Court to invalid a long accepted method of valuing property for litigation purposes. It is true that Plaintiff cannot prove that it could actually have sold the Property in April 2010 for the appraised value, but that statement is true whenever an appraisal rather than a sale is relied upon to determine fair market value, which occurs frequently in litigation. Indeed, it is rare that any party in litigation can provide evidence of fair market value, which is

required in a substantial number of lawsuits,[9] because there is no guarantee a sale will occur reasonably near the date of on which the value must legally be measured.[10] The legal measure of damages proposed by the Defendant requiring a sale to establish fair market value, in addition to not being supported by a single citation from any jurisdiction, would leave many otherwise deserving plaintiffs with no legal remedy.[11]

21. Furthermore, there is nothing in the Policy to require such a sale. Plaintiff's loss from the Defendant's breach does not have to be considered to be caused by Plaintiff's inability to receive money from a sale of the Property in October 2009, but could be seen as caused by Plaintiff's inability to receive fee simple title to the Property with a fair market value of $1,925,000.00 in October 2009. An appraisal has long been an established method of providing a reasonable estimate of the fair market value of all types of property in Texas and Florida (along with every other jurisdiction of which Plaintiff's counsel is aware) **regardless** of whether there is a subsequent sale of the appraised property in a later year.

22. In addition, while the Defendant does not appear to realize it, the Defendant's proposed damage measure would entitle Plaintiff to far more in damages than the loss actually suffered by Plaintiff from the title defects. All indications are that the amount that buyers were likely to pay for the Property along with similar property in the area continued to decline substantially subsequent to August 2010. Thus, the best price Plaintiff could receive for the Property from a buyer if it sold the Property today is likely somewhere between $600,000.00 and $300,000.00. According to the Defendant's proposed damage measure, if Plaintiff sold the Property today, Plaintiff should be

---

[9] This includes all lawsuits involving breaches of contract for the sale of real estate, in which damages are measured by the difference between contract sale price and the fair market value on the date of breach. *Barry v. Jackson*, 309 S.W.3d 135, 150 (Tex. App.—Austin 2010, no pet.)

[10] In fact, sales dates that are too remote from the valuation date are not proper evidence. *Getelman*, 481 So.2d at 1240.

[11] In addition, Plaintiff is certain that the Defendant does not typically force an insured under a title policy to sell insured property that is subject to defect to establish its fair market value for purposes of paying the insured's loss.

entitled to the drop in value of the Property from August 2010 to the present even though that loss in value had nothing to do with the title defects or the Defendant's actions. If there was any legal support for the Defendant's contention, Plaintiff would immediately sell the Property for whatever price it could and hold the Defendant to its damage calculation, which would entitle the Plaintiff to at least $1,325,000.00 in damages. If the Court believes that the Defendant's proposed damage measure is accurate, then it should provide the Plaintiff an opportunity to conform to this damage measure by selling the property. In any event, summary judgment would still be inappropriate because Plaintiff's damage claim includes incidental damages from property taxes Plaintiff had to pay on the Property during the time period when the title issues would have already been cured if Defendant had acted with reasonable diligence. *Cf MCO Environmental, Inc. v. Agricultural Excess & Surplus Ins. Co.*, 689 So.2d 1114, 1116 (Fla. Dist. Ct. App. 1997) (holding that a breach of the duty to defend entitled the plaintiff to general damages and "the amount of any collateral damages that resulted from the breach")

**D.     The discharge of the debt as a result of the Deed in Lieu of Foreclosure did not eliminate the Defendant's liability.**

23.     The Defendant contends that the formal recitation of the debt as consideration for the Deed in Lieu of Foreclosure eliminates the Defendant's liability to Plaintiff even though Plaintiff received no payment for the debt other than the Deed in Lieu of Foreclosure. The Defendant does not cite to any provisions of the Policy in support of its assertion and, indeed, the Policy permits coverage to continue after an insured takes title to an insured property. (Policy at Paragraph 2, Ex. A.) It would be exceedingly unfair if the law held that a Deed in Lieu of Foreclosure procedure, which is permitted by the Policy and which is required in many jurisdictions to eliminate the associated debt, would eliminate the Defendant's liability. Indeed, the Defendant's own claims handbook acknowledges that "satisfaction" of the mortgage debt whereby the lender acquires title does not

terminate liability under the Policy. (Claims Manual, Ex. F.) There is simply no basis for the Defendant's assertion.

### IV. CONCLUSION

FOR THESE REASONS, Plaintiff respectfully requests that this Court deny Defendant's Second Motion for Summary Judgment and Brief in Support.

**ZIMMERMAN, AXELRAD, MEYER, STERN & WISE, P.C.**

___/s/ Leonard J. Meyer_____
Leonard J. Meyer
Federal Bar No. 1477
Texas State Bar No. 13993750
3040 Post Oak Boulevard, Suite 1300
Houston, Texas 77056
Tel: (713) 552-1234
Fax: (713) 212-2740
Email: lmeyer@zimmerlaw.com

ATTORNEY-IN-CHARGE FOR PREMIER TIERRA HOLDINGS, INC.

## Certificate of Service

I certify that on October 21, 2011 a true and correct copy of the foregoing document was served via [__] certified mail, return receipt requested, [X] facsimile or electronic service or [_] hand delivery upon the following:

Randall K. Price                    *Via Fax: (214) 978-4150*
CANTEY HANGER LLP
Suite 3330
1999 Bryan Street
Dallas, Texas 75201

___/s/ Leonard J. Meyer_____
Leonard J. Meyer